**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **BRYAN ADAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **vs.** | ) | **2:10-cv-60-RWS-JCF** |
| | ) | |
| **ELIZABETH TURNER, LPN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT ELIZABETH TURNER, LPN**

**Introduction:**

Defendant Elizabeth Turner, LPN ("Nurse Turner"), is a nurse who works in correctional healthcare providing medical treatment to inmates and is employed on an as needed basis by Defendant Southern Health Partners, Inc. ("SHP"). Plaintiff Bryan Adams ("Plaintiff") is an inmate who was housed for periods of time at Rabun County Jail ("RCJ"). Plaintiff has brought suit against Nurse Turner claiming that Nurse Turner was deliberately indifferent to Plaintiff's serious medical needs. However, Plaintiff has failed to meet the requisite burden of proof to survive summary judgment on his claims against Nurse Turner. Based on the overwhelming weight of authority cited herein, Plaintiff fails to state any cognizable claims against Nurse Turner as a matter of law.

**Statement of Facts:**

Plaintiff alleges in the Complaint and in the Amendment to the Complaint that Nurse Turner was deliberately indifferent to his medical needs by failing to adequately treat his teeth while he was incarcerated at RCJ (See Docket Documents 1 & 4). However, as the medical records and the testimony of Nurse Turner will show, Plaintiff was properly treated for his alleged ailments.

Nurse Turner has been a licensed practical nurse since 1996 (See the Affidavit of Elizabeth Turner, LPN, "Turner Aff.," ¶ 3. A true and correct copy of the Turner Aff. is attached hereto as Exhibit "A"). Nurse Turner was at all times relevant to the Complaint a full-time employee for SHP at RCJ (Turner Aff., ¶ 2). SHP is a company who contracts with various county jails to provide medical services to the inmates housed in these jails, and had a contract with the RCJ during the timeframe relevant to the Complaint to provide (Turner Aff., ¶ 4).

Plaintiff Bryan Adams ("Plaintiff") had been an inmate at RCJ intermittently over the past few years (Turner Aff., ¶ 5). Plaintiff was technically an inmate of White County Jail ("WCJ"), but RCJ agreed to house Plaintiff and other inmates by agreement (Turner Aff., ¶ 5). Nurse Turner treated Plaintiff on several occasions from September 2009 through June 2010 while he was housed at RCJ intermittently (Turner Aff., ¶ 6). The treatment provided to Plaintiff at RCJ by

Nurse Turner and other members of the medical staff during the timeframe relevant to the Complaint was appropriate, timely and proper at all times (Turner Aff., ¶ 30).

On September 17, 2009, Plaintiff was transferred to RCJ (Turner Aff., ¶ 7). He did not report any history of dental problems to the intake officer, but his medical information transfer form from WCJ indicated he had dental problems and was receiving Percogesic for pain and a Peridyl (dental) Rinse (Turner Aff., ¶ 7). Nurse Turner noted Plaintiff was receiving these medications at WCJ and these medications were continued per standing protocol at RCJ (Turner Aff., ¶ 8). Plaintiff was subsequently sent back to WCJ and then returned to RCJ on November 20, 2009 (Turner Aff., ¶ 9).

While housed at WCJ, Plaintiff reportedly had two teeth pulled (Turner Aff., ¶ 9). One November 20, 2009, Nurse Turner examined Plaintiff and noted he had no active bleeding, no acute distress, had a normal temperature, and was talkative (Turner Aff., ¶ 9). Per orders from WCJ medical personnel and RCJ protocol, Plaintiff received ibuprofen for pain (Turner Aff., ¶ 9). On November 21, 2009, Nurse Tammy Erickson noted Plaintiff was receiving an antibiotic at WCJ in addition to the ibuprofen (Turner Aff., ¶ 10). Per these orders and RCJ protocol, Plaintiff received the antibiotics as ordered (Turner Aff., ¶ 10).

Plaintiff was then transferred back and forth between WCJ and RCJ. Plaintiff did not complain again of any teeth issues again until February 25, 2010, when he submitted a sick call form complaining he had two “broke off” teeth and was hurting, and also complained of back pain (Turner Aff., ¶ 11). On February 26, 2010, Nurse Turner saw Plaintiff and per the RCJ protocol, he was placed on Percogesic for his pain for fourteen days (Turner Aff., ¶ 12).

On March 6, 2010, Plaintiff again complained of a bad toothache (Turner Aff., ¶ 13). On March 8, 2010, Nurse Turner evaluated Plaintiff and noted his pain increased with eating (Turner Aff., ¶ 13). Plaintiff also denied having prior dental work performed in the past (Turner Aff., ¶ 13). Per standing protocol, Nurse Turner placed Plaintiff on a soft food diet and ibuprofen to treat Plaintiff’s alleged pain (Turner Aff., ¶ 13).

On March 9, 2010, Plaintiff complained that he disliked the soft diet he was placed upon, and requested he be placed back on a normal diet (Turner Aff., ¶ 14). On the same day, Plaintiff refused his soft diet tray (Turner Aff., ¶ 14). On March 10, 2010, Nurse Turner saw Plaintiff, and after their discussion, he was returned to a regular diet and his ibuprofen was discontinued (Turner Aff., ¶ 14).

On March 14, 2010, Plaintiff requested antibiotics for his teeth (Turner Aff., ¶ 15). On March 15, 2010, Nurse Turner saw Plaintiff and evaluated his condition

(Turner Aff., ¶ 15). Nurse Turner noted a small amount of swelling and redness in his gums, but no drainage (Turner Aff., ¶ 15). She also noted a decayed tooth, which she continued to monitor (Turner Aff., ¶ 15). Decayed teeth should be monitored for any change in condition that would require the intervention of a dentist (Turner Aff., ¶ 15). Per RCJ protocol, Plaintiff was placed on an antibiotic to ward off infection, was also given ibuprofen for pain, and was placed on a soft diet again (Turner Aff., ¶ 15). Nurse Turner further advised Plaintiff to alert the medical staff of any changes to his condition (Turner Aff., ¶ 15).

On March 17, 2010, Plaintiff complained that he did not like the cheese sandwich in the soft diet, saying it made him sick to his stomach (Turner Aff., ¶ 16). On March 19, 2010, Nurse Turner saw Plaintiff for this complaint and new claims he was vomiting the cheese (Turner Aff., ¶ 16). Concerned, she asked the RCJ officers and the medical staff at WCJ whether Plaintiff had been sick from cheese before (Turner Aff., ¶ 16). No one had noticed Plaintiff becoming sick or could otherwise verify Plaintiff's claims of becoming sick from the cheese (Turner Aff., ¶ 16). Plaintiff was continued on the same protocol as before (Turner Aff., ¶ 16).

On March 22, 2010, Plaintiff complained he had not received his medications that day (Turner Aff., ¶ 17). At 10:00 p.m. that evening, Plaintiff was

given ibuprofen and his antibiotic (Turner Aff., ¶ 17). On March 23, 2010, Nurse Turner again saw Plaintiff for tooth pain (Turner Aff., ¶ 18). Plaintiff complained he had completed his round of ibuprofen and that his pain would start again without it (Turner Aff., ¶ 18). He also requested to have all of his teeth pulled (Turner Aff., ¶ 18). Nurse Turner noted no swelling, redness, or drainage, in Plaintiff's teeth (Turner Aff., ¶ 18). Nurse Turner noted no changes in Plaintiff's decayed tooth (Turner Aff., ¶ 18). Per protocol, Plaintiff was placed back on ibuprofen for seven more days (Turner Aff., ¶ 18).

Plaintiff was then sent back to WCJ for a couple of days, and when he returned to RCJ on March 28, 2010, he reported he was being given Percogesic and ibuprofen for his tooth pain by the WCJ medical staff (Turner Aff., ¶ 19). Plaintiff was continued on the ibuprofen and the Percogesic prescribed at WCJ (Turner Aff., ¶ 19).

On March 30, 2010, the day Plaintiff's ibuprofen administration would expire, Plaintiff complained that his tooth pain was returning and getting worse than it was before (Turner Aff., ¶ 20). On March 31, 2010, Nurse Hannah Cheek saw Plaintiff for this alleged pain (Turner Aff., ¶ 20). Plaintiff told Nurse Cheek that his teeth had gotten worse since he was "not doing dope anymore" (Turner Aff., ¶ 20). It is common for persons who take methamphetamine to have dental

problems (Turner Aff., ¶ 20).

Nurse Cheek noted some swelling in Plaintiff's gums, but no redness or drainage (Turner Aff., ¶ 21). She also noted the decayed tooth (Turner Aff., ¶ 21). Per a physician's order, Ms. Cheek discontinued Plaintiff's Percogesic, but continued the ibuprofen (Turner Aff., ¶ 21). Plaintiff was advised to notify the medical staff of any changes in his condition (Turner Aff., ¶ 21).

On April 6, 2010, Plaintiff complained he did not receive the correct food tray or his medications that morning (Turner Aff., ¶ 22). Nurse Turner saw Plaintiff that day, and he requested a soft food tray instead of his regular diet food tray (Turner Aff., ¶ 22). He then admitted he had received his medications and just wanted a re-fill (Turner Aff., ¶ 22). Nurse Turner discussed with Plaintiff that his medications were supposed to end tomorrow, and recommended that he notify the medical staff if the pain returned (Turner Aff., ¶ 22). Plaintiff indicated he understood (Turner Aff., ¶ 22).

On April 7, 2010, Plaintiff complained of swelling and throbbing in his mouth (Turner Aff., ¶ 23). However, Plaintiff was sent to WCJ for a court appearance (Turner Aff., ¶ 23). He did not return to RCJ until that weekend, on April 10, 2012 (Turner Aff., ¶ 23).

On Saturday, April 10, 2010, when Plaintiff returned to RCJ, he complained

that he could not eat, that his teeth were throbbing again, and that they were "killing" him (Turner Aff., ¶ 24). There is no weekend coverage at RCJ by the nursing staff, and so the medical staff could not see him until Monday, April 12, 2010 (Turner Aff., ¶ 24). However, if there was a medical emergency, the officers at RCJ are trained to call 911 (Turner Aff., ¶ 24).

On Monday, April 12, 2010, Nurse Turner examined Plaintiff and found no swelling, no redness, and no drainage in his mouth (Turner Aff., ¶ 25). She further noted no changes in Plaintiff's decayed tooth (Turner Aff., ¶25). Plaintiff's vital signs were normal (Turner Aff., ¶ 25). Per protocol, Plaintiff was placed on Percogesic and a soft diet (Turner Aff., ¶ 25). Plaintiff was also advised to notify the medical staff of any changes (Turner Aff., ¶ 25).

On May 4, 2010, Plaintiff complained his teeth were throbbing again, and wanted his money back because he continued to have the same problems (Turner Aff., ¶ 26). The RCJ deals with any monetary issues raised by inmates, not Nurse Turner (Turner Aff., ¶ 26). She saw Plaintiff on May 6, 2010, and evaluated his gums and teeth (Turner Aff., ¶ 26). Nurse Turner noted no swelling, redness, or drainage, and no change in Plaintiff's decayed tooth (Turner Aff., ¶ 26). She explained to Plaintiff that ibuprofen can upset the GI tract, and so Plaintiff would only be given ibuprofen for fourteen days at a time (Turner Aff., ¶ 26). Plaintiff

was also placed on a soft diet per protocol (Turner Aff., ¶ 26). Nurse Turner again advised Plaintiff to notify the medical staff of any changes to his condition (Turner Aff., ¶ 26).

On Thursday, May 20, 2010, the day Plaintiff's prescriptions expired, Plaintiff complained that he was still having the same teeth problems (Turner Aff., ¶ 27). He also threatened to sue to get his money back (Turner Aff., ¶ 27). Nurse Turner saw Plaintiff on Monday, May 24, 2010, for his complaints (Turner Aff., ¶ 27). She noted no changes to Plaintiff's conditions, but due to the fact Plaintiff had been on ibuprofen for several weeks, Plaintiff was placed on acetaminophen for pain for a week (Turner Aff., ¶ 27).

Thereafter, Plaintiff was transferred back to WCJ and Nurse Turner has had no further contact with Plaintiff since his transfer (Turner Aff., ¶ 28). She spoke with a nurse from WCJ on June 8, 2010, and advised her of Plaintiff's frequent complaints of dental pain (Turner Aff., ¶ 28).

Since Plaintiff was a WCJ inmate, it was the responsibility of WCJ to provide Plaintiff with any outside dental care he may require. Regardless, Nurse Turner never noticed anything that would indicate Plaintiff required the assistance of a dentist (Turner Aff., ¶ 29). In addition, the jail physician for RCJ, Dr. Marc Chetta, reviewed all of the medical records for Plaintiff at the time they were

written, and he never communicated that Plaintiff needed to see a dentist for any reason while housed as RCJ (Turner Aff., ¶ 29).

The treatment provided to Plaintiff at RCJ by Nurse Turner and other members of the medical staff during the timeframe relevant to the Complaint was appropriate, timely and proper at all times (Turner Aff., ¶ 30). Nurse Turner has always treated Plaintiff with his best interests in mind (Turner Aff., ¶ 30). Any time Plaintiff submitted a sick call form, or otherwise complained of any ailment, he was seen in a timely fashion and properly treated (Turner Aff., ¶ 31).

Further, no act or omission on the part of Nurse Turner caused or contributed to the injuries and damages Plaintiff has claimed in the Complaint (Turner Aff., ¶ 32). The treatment she provided Plaintiff met or exceeded the standard of care for nurses in like or similar situations (Turner Aff., ¶ 32). Nurse Turner has never ignored an inmate and would never intentionally or otherwise maliciously deny an inmate medical care, and she certainly did not deny Plaintiff any medical care (Turner Aff., ¶ 33). There is simply no evidence that Nurse Turner was deliberately indifferent to any serious medical need Plaintiff may have had. Summary judgment is proper for Nurse Turner.

**Law and Argument:**

**A. Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). The Eleventh Circuit has repeatedly held that, "the mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden applicable to the particular cause of action before it.'" Johnson v. Board of Regents of the University of Georgia, 263 F.3d 1234, 1243 (11th Cir. 2001) (citations omitted).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. While the facts pleaded by pro se plaintiff are liberally construed, a pro se plaintiff may not rest upon the unsupported allegations of his pleadings, but instead must show there is a genuine issue of fact for trial by producing affidavits, depositions, answers to interrogatories, and

admissions. Fed. R. Civ. Proc. 56(c); Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).

In the context of a § 1983 claim arising out of medical care received, an inmate must offer proof of "deliberate indifference to his serious medical needs" in order to overcome a motion for summary judgment. Seals v. Shah, 145 F.Supp.2d 1378, 1383 (NDGa 2001). Plaintiff has failed to do so; thus, summary judgment must be granted in favor of Nurse Turner.

**B. Plaintiff's § 1983 claim against Nurse Turner fails because there is no evidence that Nurse Turner was deliberately indifferent to a serious medical need.**

"The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999) (citing Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994)). However, as explained by the Campbell court, "Only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (internal citations omitted). In order to prove "unnecessary and wanton infliction of pain" in a prison medical care case, a plaintiff must prove that the defendant exhibited a "deliberate indifference to the prisoners' serious medical needs." Id. The United States Supreme Court case of Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321 (1991), and

the cases subsequent to Wilson have clarified that the analysis requires an objective component scrutinizing whether the medical need was serious and the alleged deprivation, and a subjective component analyzing the defendant's mental intent. Campbell, 169 F.3d at 1363. For the purposes of this summary judgment motion only, Nurse Turner does not argue that Plaintiff's medical needs were not serious, and instead focuses her argument upon the conduct of Nurse Turner: objectively and subjectively, her conduct did not amount to deliberate indifference.

**1. Plaintiff's § 1983 medical claim must fail because he has offered no evidence of any conduct by Nurse Turner in support of the objective component of a § 1983 claim.**

In the seminal case of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976), the United States Supreme Court held that:

> [A] complaint that a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege [and be able to prove] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

Estelle, 429 U.S. at 105, 97 S.Ct. at 292 (1976) (emphasis added). To satisfy the objective component in a deliberate indifference analysis, the response of the

defendant to the prisoner's serious medical need must be "poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.'" Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (emphasis added).

The medical records of Plaintiff certainly do not show any conduct by Nurse Turner that even arguably rises to the level of negligence, much less one that would cause Plaintiff "an unnecessary and wanton infliction of pain." Id. To the contrary, Nurse Turner evaluated and treated Plaintiff over a dozen times for his dental pain, monitoring him closely (See Turner Aff., generally). The care and treatment she provided was appropriate, timely, and proper (Turner Aff., ¶ 30). There is nothing about the Nurse Turner's response to Plaintiff's complaints that could even arguably rise to the level of constituting an "unnecessary and wanton infliction of pain." Id.

In addition, a disagreement by an inmate concerning what medical treatment should be received is not a basis for a claim of deliberate indifference to a serious medical need. Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995 ); Grimsley v. Hammack, 256 Fed.Appx. 271, 273, 2007 WL 4165927 (11th Cir. 2007). Plaintiff's claims amount to a simple disagreement over what type and the dosage

of medications he should receive, and whether his teeth should all be pulled, and this difference of opinion is not a basis for a § 1983 claim (See Docket Documents 1 & 4). The medical records reflect that his medical needs were attended to in a proper and timely fashion (See Turner Aff., generally).

There is simply no evidence that any conduct by Nurse Turner caused or contributed to any alleged injuries of Plaintiff (Turner Aff., ¶ 31). In fact, there is no evidence of even simple negligence: the treatment Nurse Turner provided Plaintiff met or exceeded the standard of care for nurses in like or similar situations (Turner Aff., ¶ 32). Plaintiff cannot satisfy his burden of proof and withstand summary judgment because there is no action or inaction by Nurse Turner that could objectively be considered so "grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Cantrell v. Thurman, 231 Ga. App. 510, 512, 499 S.E.2d 416, 419-20 (1998). (Emphasis added; internal citations omitted). Thus, summary judgment should be granted in favor of Nurse Turner on Plaintiff's § 1983 medical claims.

**2. Plaintiff's § 1983 medical claims must fail because he has offered no evidence of any conduct on the part of Nurse Turner in support of the subjective component of a § 1983 claim.**

In Farmer v. Brennan, 511 U.S. at 837, the United States Supreme Court again explained the additional subjective component of an Eighth Amendment §

1983 claim stating, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. In order to overcome summary judgment, in addition to showing that the actual conduct of Nurse Turner rose above the level of ordinary negligence, Plaintiff must also offer evidence that Nurse Turner acted with specific intent. Campbell, 169 F.3d at 1362 (emphasis added). "The issue of subjective mental intent under Farmer is different from whether [the inmate's] medical treatment was negligent or grossly inadequate." Id. at 1370.

"Summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge as follows: since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness." Campbell at 1364 (emphasis in original and emphasis added; internal citations omitted). "The plaintiff must submit evidence that the medical professional defendant actually was aware of the significant risk of serious harm but deliberately proceeded with grossly inadequate treatment anyway." Id. at 1370.

No such evidence has been, nor can be, offered by Plaintiff.[1] In fact, the evidence is indisputable that Nurse Turner treated Plaintiff with his best interests in mind (Turner Aff., ¶ 30). Nurse Turner has never ignored an inmate and would never intentionally or otherwise spitefully deny an inmate medical care, and she certainly did not maliciously deny Plaintiff any medical treatment (Turner Aff., ¶ 33). There is no evidence that Nurse Turner was actually aware of a risk of harm to Plaintiff and deliberately proceeded to inadequately treat him anyway (See generally, Turner Aff.). Accordingly, Plaintiff's § 1983 claims for inadequate medical care must fail.

**Conclusion:**

Plaintiff has failed to provide any evidence to support a colorable § 1983 claim against Defendant Elizabeth Turner, LPN. Accordingly, Nurse Turner is entitled to, and respectfully requests, that this Court enter summary judgment in her favor on all of Plaintiff's claims.

[1] Plaintiff may not rest on the unsupported allegations of his Complaint. Fed. R. Civ. Proc. 56(c); Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).

Respectfully submitted this 7th day of January, 2013.

**FREEMAN MATHIS & GARY, LLP**

/s/ Shira A. Crittendon
Shira Adler Crittendon
Georgia Bar No. 005425
Laura L. Broome
Georgia Bar No. 452380
*Attorneys for Defendant Elizabeth Turner, LPN*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
Phone: (770) 818-0000
Fax: (770) 937-9960
Email: scrittendon@fmglaw.com; lbroome@fmglaw.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing brief was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1(C).

/s/ Laura L. Broome
Laura L. Broome
Georgia Bar No. 452380
*Attorney for Defendant Elizabeth Turner, LPN*

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
Phone: (770) 818-0000
Fax: (770) 937-9960
Email: lbroome@fmglaw.com

# CERTIFICATE OF SERVICE

This is to certify that on **January 7, 2013**, I electronically filed the foregoing **Brief in Support of Motion for Summary Judgment by Defendant Elizabeth Turner, LPN,** with the Clerk of Court using the CM/ECF system, and that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

Bryan Adams
GDC #279977
Wilcox State Prison
PO Box 397
Abbeville, GA 31001
*(per change of address filed on 11/23/12)*

/s/ Laura L. Broome
Laura L. Broome
Georgia Bar No. 452380
*Attorney for Defendant Elizabeth Turner, LPN*

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
Phone: (770) 818-0000
Fax: (770) 937-9960
Email: lbroome@fmglaw.com