**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **BRYAN ADAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **vs.** | ) | **2:10-cv-60-RWS-JCF** |
| | ) | |
| **ELIZABETH TURNER, LPN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**AFFIDAVIT OF DEFENDANT ELIZABETH TURNER, LPN**

PERSONALLY APPEARED before the undersigned attesting officer, duly authorized to administer oaths, Elizabeth Turner, LPN, who, after first being duly sworn, deposes and states as follows:

1.

My name is Elizabeth Turner, LPN. I am over the age of twenty-one (21) and am otherwise competent to make this affidavit.

2.

I am currently employed by Southern Health Partners, Inc. ("SHP"), on an as needed basis to work at the Rabun County Jail ("RCJ"). During all times relevant to the Complaint, I worked for SHP full-time at RCJ as a licensed practical nurse.

3.

I am a licensed practical nurse in the state of Georgia and was so licensed throughout the relevant time period at issue in this case. My license has never been revoked, sanctioned, or in any way inhibited. I have been a licensed practical nurse since 1996.

4.

SHP is a company who contracts with various county jails to provide medical services to the inmates housed in these jails. SHP had a contract with RCJ during the timeframe relevant to the Complaint to provide medical services to the inmates of RCJ.

5.

Plaintiff Bryan Adams ("Plaintiff") has been housed at the RCJ intermittently over the past few years. He was technically an inmate of White County Jail ("WCJ"), but RCJ agreed to house Plaintiff and other inmates through an agreement between WCJ and RCJ.

6.

I am personally familiar with Plaintiff's medical records from RCJ, having treated Plaintiff and participated in creating and keeping the medical records for Plaintiff. Plaintiff's medical records were created and kept in the ordinary course

of business of the medical providers working for SHP, and a true and authentic copy of said records from September 2009 through June 2010, the timeframe relevant to the Complaint, is attached hereto as Exhibit "1".

7.

On September 17, 2009, Plaintiff was transferred to RCJ. He did not report any history of dental problems to the intake officer, but his medical information transfer form from WCJ indicated he had dental problems and was receiving Percogesic for pain and a Peridyl (dental) Rinse (Exhibit 1).

8.

I noted Plaintiff was receiving these medications at WCJ and they were continued per standing protocol at RCJ (Exhibit 1).

9.

Plaintiff was subsequently sent back to WCJ and then returned to RCJ on November 20, 2009 (Exhibit 1). While housed at WCJ, Plaintiff reportedly had two teeth pulled (Exhibit 1). I examined Plaintiff and noted he had no active bleeding, no acute distress, had a normal temperature, and was talkative (Exhibit 1). Per orders from WCJ medical personnel and RCJ protocol, Plaintiff received ibuprofen for pain (Exhibit 1).

10.

On November 21, 2009, Nurse Tammy Erickson noted Plaintiff was receiving an antibiotic at WCJ in addition to the ibuprofen (Exhibit 1). Per these orders and RCJ protocol, Plaintiff received the antibiotics as ordered (Exhibit 1).

11.

Plaintiff was then transferred back and forth between WCJ and RCJ. Plaintiff did not complain again of any teeth issues again until February 25, 2010, when he submitted a sick call form complaining he had two "broke off" teeth and was hurting, and also complained of back pain (Exhibit 1).

12.

On February 26, 2010, I saw Plaintiff and per RCJ protocol, placed him on Percogesic for his pain for fourteen days (Exhibit 1).

13.

On March 6, 2010, Plaintiff again complained of a bad toothache (Exhibit 1). On March 8, 2010, I evaluated Plaintiff and noted his pain increased with eating (Exhibit 1). Plaintiff also denied having prior dental work performed in the past (Exhibit 1). Per standing protocol, I placed Plaintiff on a soft food diet and ibuprofen to treat Plaintiff's alleged pain (Exhibit 1).

14.

On March 9, 2010, Plaintiff complained that he disliked the soft diet he placed upon, and requested he be placed back on a normal diet (Exhibit 1). On the same day, Plaintiff refused his soft diet tray (Exhibit 1). On March 10, 2010, I saw Plaintiff, and after our discussion, he was returned to a regular diet and his ibuprofen was discontinued (Exhibit 1).

15.

On March 14, 2010, Plaintiff requested antibiotics for his teeth (Exhibit 1). On March 15, 2010, I saw Plaintiff and evaluated his condition (Exhibit 1). I noted a small amount of swelling and redness in his guns, but no drainage (Exhibit 1). I noted a decayed tooth, which I continued to monitor (Exhibit 1). Decayed teeth should be monitored for any change in condition that would require the intervention of a dentist (Exhibit 1). Per RCJ protocol, Plaintiff was placed on an antibiotic to ward off infection, was also given ibuprofen for pain, and was placed on a soft diet again (Exhibit 1). I further advised Plaintiff to alert the medical staff of any changes to his condition (Exhibit 1).

16.

On March 17, 2010, Plaintiff complained that he did not like the cheese sandwich in the soft diet, saying it made him sick to his stomach (Exhibit 1). On

March 19, 2010, I saw Plaintiff for this complaint and new claims he was vomiting the cheese (Exhibit 1). Concerned, I asked the RCJ officers and the medical staff at WCJ whether Plaintiff had been sick from cheese before (Exhibit 1). No one had noticed Plaintiff becoming sick, and no one could verify Plaintiff's claims of becoming sick (Exhibit 1). Plaintiff was continued on the same protocol as before (Exhibit 1).

17.

On March 22, 2010, Plaintiff complained he had not received his medications that day (Exhibit 1). At 10:00 p.m. that evening, Plaintiff was given ibuprofen and his antibiotic (Exhibit 1).

18.

On March 23, 2010, I again saw Plaintiff for tooth pain (Exhibit 1). Plaintiff complained he had completed his round of ibuprofen and that his pain would start again without it (Exhibit 1). He also requested to have all of his teeth pulled (Exhibit 1). I noted no swelling, redness, or drainage, in Plaintiff's teeth (Exhibit 1). I noted no changes in Plaintiff's decayed tooth (Exhibit 1). Per protocol, I placed Plaintiff back on ibuprofen for seven more days (Exhibit 1).

19.

Plaintiff was then sent back to WCJ for a couple of days, and when he

returned to RCJ on March 28, 2010, he reported he was being given Percogesic and ibuprofen for his tooth pain (Exhibit 1). Plaintiff was continued on the ibuprofen and the Percogesic prescribed at WCJ (Exhibit 1).

20.

On March 30, 2010, the day Plaintiff's ibuprofen administration would expire, Plaintiff complained that his tooth pain was returning and getting worse than it was (Exhibit 1). On March 31, 2010, Nurse Hannah Cheek saw Plaintiff for this alleged pain (Exhibit 1). Plaintiff told Nurse Cheek that his teeth had gotten worse since he was "not doing dope anymore" (Exhibit 1). It is common for persons who take methamphetamine to have dental problems (Exhibit 1).

21.

Nurse Cheek noted some swelling in his gums, but no redness or drainage (Exhibit 1). She also noted the decayed tooth (Exhibit 1). Per a physician's order, Ms. Cheek discontinued Plaintiff's Percogesic, but continued the ibuprofen (Exhibit 1). Plaintiff was advised to notify the medical staff of any changes in his condition (Exhibit 1).

22.

On April 6, 2010, Plaintiff complained he did not receive the correct food tray or his medications that morning (Exhibit 1). I saw Plaintiff that day, and he

requested a soft food tray instead of his regular diet food tray (Exhibit 1). He also admitted he had received his medications and just wanted a re-fill (Exhibit 1). I discussed with Plaintiff that his medications were supposed to end tomorrow, and recommended that he notify the medical staff if the pain returned (Exhibit 1). Plaintiff indicated he understood (Exhibit 1).

23.

On April 7, 2010, Plaintiff complained of swelling and throbbing in his mouth (Exhibit 1). However, Plaintiff was sent to WCJ for a court appearance (Exhibit 1). He did not return to RCJ until that weekend, on April 10, 2012 (Exhibit 1).

24.

On April 10, 2010, when Plaintiff returned to RCJ, he complained that he could not eat and that his teeth were throbbing again, and that they were "killing" him (Exhibit 1). There is no weekend coverage at RCJ by the nursing staff, and so the medical staff could not see him until Monday, April 12, 2010. However, if there was a medical emergency, the officers at RCJ are trained to call 911.

25.

On April 12, 2010, I examined Plaintiff and found no swelling, no redness, and no drainage in his mouth (Exhibit 1). I further noted no changes in Plaintiff's

decayed tooth (Exhibit 1). Plaintiff's vital signs were normal (Exhibit 1). Per protocol, Plaintiff was placed on Percogesic and a soft diet (Exhibit 1). Plaintiff was also advised to notify the medical staff of any changes (Exhibit 1).

26.

On May 4, 2010, Plaintiff complained his teeth were throbbing again, and wanted his money back because he continued to have the same problems (Exhibit 1). The RCJ deals with any monetary issues raised by inmates, not me. I saw Plaintiff on May 6, 2010, and evaluated his gums and teeth (Exhibit 1). I noted no swelling, redness, or drainage, and no change in Plaintiff's decayed tooth (Exhibit 1). I explained to Plaintiff that ibuprofen can upset the GI tract, and so Plaintiff would only be given it for fourteen days at a time (Exhibit 1). Plaintiff was also placed on a soft diet per protocol (Exhibit 1). I again advised Plaintiff to notify the medical staff of any changes to his condition (Exhibit 1).

27.

On Thursday, May 20, 2010, the day Plaintiff's medications were stopped, Plaintiff complained that he was still having the same teeth problems (Exhibit 1). He also threatened to sue for his money back (Exhibit 1). I saw Plaintiff on Monday, May 24, 2010, for his complaints (Exhibit 1). I noted no changes to Plaintiff's conditions, but due to the fact Plaintiff had been on ibuprofen for several

weeks, Plaintiff was placed on acetaminophen for pain for a week (Exhibit 1).

28.

Thereafter, Plaintiff was transferred back to WCJ and I have had no further contact with Plaintiff since his transfer. I spoke with a nurse from WCJ on June 8, 2010, and I advised her of Plaintiff's frequent complaints of dental pain (Exhibit 1).

29.

Since Plaintiff was a WCJ inmate, it was the responsibility of WCJ to provide Plaintiff with any outside dental care he may require. Regardless, I never noticed anything that would indicate to me Plaintiff required the assistance of a dentist (Exhibit 1). In addition, the jail physician for RCJ, Dr. Marc Chetta, reviewed all of the medical records for Plaintiff at the time they were written, and he never communicated that Plaintiff needed to see a dentist for any reason while housed as RCJ (Exhibit 1).

30.

Based on my review of the medical records of Plaintiff at RCJ, the treatment provided to Plaintiff at RCJ by me and other members of the medical staff during the timeframe relevant to the Complaint was appropriate, timely and proper at all times (Exhibit 1). I have always treated Plaintiff with his best interests in mind.

31.

Any time Plaintiff submitted a sick call form, or otherwise complained of any ailment, he was seen in a timely fashion and properly treated (Exhibit 1).

32.

No act or omission on my part caused or contributed to the injuries and damages Plaintiff has claimed in the Complaint. In addition, the treatment I provided Plaintiff met or exceeded the standard of care for nurses in like or similar situations.

33.

I have never ignored an inmate and would never intentionally or otherwise maliciously deny an inmate medical care, and I certainly did not deny Plaintiff any medical care.

FURTHER AFFIANT SAITH NAUGHT.

Elizabeth Turner, LPN

Sworn to and subscribed
before me this 4th day
of January, 2013.

Notary Public

My Commission Expires:

NOTARY PUBLIC
HOLCOMB
Exp. Oct. 31, 2015
RABUN COUNTY, GA

[NOTARIAL SEAL]