**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **BRYAN ADAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **vs.** | ) | **2:10-cv-60-RWS-JCF** |
| | ) | |
| **ELIZABETH TURNER, LPN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED BY DEFENDANT ELIZABETH TURNER, LPN**

Pursuant to Local Rule 56, Defendant Elizabeth Turner, LPN ("Nurse Turner"), hereby submits the following statement of material facts as to which there is no genuine issue to be tried.

1.

Nurse Turner has been a licensed practical nurse since 1996 (See the Affidavit of Elizabeth Turner, LPN, "Turner Aff.," ¶ 3. A true and correct copy of the Turner Aff. is attached to the Brief in Support of Motion for Summary Judgment by Defendant Elizabeth Turner, LPN as Exhibit "A").

2.

Nurse Turner was at all times relevant to the Complaint a full-time employee for SHP at RCJ (Turner Aff., ¶ 2).

3.

SHP is a company who contracts with various county jails to provide medical services to the inmates housed in these jails, and had a contract with the RCJ during the timeframe relevant to the Complaint to provide (Turner Aff., ¶ 4).

4.

Plaintiff Bryan Adams ("Plaintiff") had been an inmate at RCJ intermittently over the past few years (Turner Aff., ¶ 5).

5.

Plaintiff was technically an inmate of White County Jail ("WCJ"), but RCJ agreed to house Plaintiff and other inmates by agreement (Turner Aff., ¶ 5).

6.

Nurse Turner treated Plaintiff on several occasions from September 2009 through June 2010 while he was housed at RCJ intermittently (Turner Aff., ¶ 6).

7.

The treatment provided to Plaintiff at RCJ by Nurse Turner and other members of the medical staff during the timeframe relevant to the Complaint was appropriate, timely and proper at all times (Turner Aff., ¶ 30).

8.

On September 17, 2009, Plaintiff was transferred to RCJ (Turner Aff., ¶ 7).

9.

Upon his arrival at RCJ, Plaintiff did not report any history of dental problems to the intake officer, but his medical information transfer form from WCJ indicated he had dental problems and was receiving Percogesic for pain and a Peridyl (dental) Rinse (Turner Aff., ¶ 7).

10.

Nurse Turner noted Plaintiff was receiving these medications at WCJ and these medications were continued per standing protocol at RCJ (Turner Aff., ¶ 8).

11.

Plaintiff was subsequently sent back to WCJ and then returned to RCJ on November 20, 2009 (Turner Aff., ¶ 9).

12.

While housed at WCJ, Plaintiff had two teeth pulled (Turner Aff., ¶ 9).

13.

One November 20, 2009, Nurse Turner examined Plaintiff and noted he had no active bleeding, no acute distress, had a normal temperature, and was talkative (Turner Aff., ¶ 9).

14.

Per orders from WCJ medical personnel and RCJ protocol, Plaintiff received ibuprofen for pain (Turner Aff., ¶ 9).

15.

On November 21, 2009, Nurse Tammy Erickson noted Plaintiff was receiving an antibiotic at WCJ in addition to the ibuprofen (Turner Aff., ¶ 10).

16.

Per these orders and RCJ protocol, Plaintiff received the antibiotics as ordered (Turner Aff., ¶ 10).

17.

Plaintiff was then transferred back and forth between WCJ and RCJ.

18.

Plaintiff did not complain again of any teeth issues again until February 25, 2010, when he submitted a sick call form complaining he had two “broke off” teeth and was hurting, and also complained of back pain (Turner Aff., ¶ 11).

19.

On February 26, 2010, Nurse Turner saw Plaintiff and per the RCJ protocol, he was placed on Percogesic for his pain for fourteen days (Turner Aff., ¶ 12).

20.

On March 6, 2010, Plaintiff again complained of a bad toothache (Turner Aff., ¶ 13).

21.

On March 8, 2010, Nurse Turner evaluated Plaintiff and noted his pain increased with eating (Turner Aff., ¶ 13).

22.

Plaintiff also denied having prior dental work performed in the past (Turner Aff., ¶ 13).

23.

Per standing protocol, Nurse Turner placed Plaintiff on a soft food diet and ibuprofen to treat Plaintiff's alleged pain (Turner Aff., ¶ 13).

24.

On March 9, 2010, Plaintiff complained that he disliked the soft diet he was placed upon, and requested he be placed back on a normal diet (Turner Aff., ¶ 14).

25.

Also on March 9, 2010, Plaintiff refused his soft diet tray (Turner Aff., ¶ 14).

26.

On March 10, 2010, Nurse Turner saw Plaintiff, and after their discussion, he was returned to a regular diet and his ibuprofen was discontinued (Turner Aff., ¶ 14).

27.

On March 14, 2010, Plaintiff requested antibiotics for his teeth (Turner Aff., ¶ 15).

28.

On March 15, 2010, Nurse Turner saw Plaintiff and evaluated his condition (Turner Aff., ¶ 15).

29.

Nurse Turner noted a small amount of swelling and redness in his gums, but no drainage (Turner Aff., ¶ 15).

30.

She also noted a decayed tooth, which she continued to monitor (Turner Aff., ¶ 15).

31.

Decayed teeth should be monitored for any change in condition that would require the intervention of a dentist (Turner Aff., ¶ 15).

32.

Per RCJ protocol, Plaintiff was placed on an antibiotic to ward off infection, was also given ibuprofen for pain, and was placed on a soft diet again (Turner Aff., ¶ 15).

33.

Nurse Turner further advised Plaintiff to alert the medical staff of any changes to his condition (Turner Aff., ¶ 15).

34.

On March 17, 2010, Plaintiff complained that he did not like the cheese sandwich in the soft diet, saying it made him sick to his stomach (Turner Aff., ¶ 16).

35.

On March 19, 2010, Nurse Turner saw Plaintiff for this complaint and new claims he was vomiting the cheese (Turner Aff., ¶ 16).

36.

Concerned, she asked the RCJ officers and the medical staff at WCJ whether

Plaintiff had been sick from cheese before (Turner Aff., ¶ 16).

37.

No one had noticed Plaintiff becoming sick, and no one could verify Plaintiff’s claims of becoming sick (Turner Aff., ¶ 16).

38.

Plaintiff was continued on the same protocol as before (Turner Aff., ¶ 16).

39.

On March 22, 2010, Plaintiff complained he had not received his medications that day (Turner Aff., ¶ 17).

40.

However, at 10:00 p.m. on the evening of March 22, 2010, Plaintiff was given ibuprofen and his antibiotic (Turner Aff., ¶ 17).

41.

On March 23, 2010, Nurse Turner again saw Plaintiff for tooth pain (Turner Aff., ¶ 18).

42.

Plaintiff complained he had completed his round of ibuprofen and that his pain would start again without it (Turner Aff., ¶ 18).

43.

Plaintiff also requested to have all of his teeth pulled (Turner Aff., ¶ 18).

44.

Nurse Turner noted no swelling, redness, or drainage, in Plaintiff's teeth (Turner Aff., ¶ 18).

45.

Nurse Turner noted no changes in Plaintiff's decayed tooth (Turner Aff., ¶ 18).

46.

Per protocol, Plaintiff was placed back on ibuprofen for seven more days (Turner Aff., ¶ 18).

47.

Plaintiff was then sent back to WCJ for a couple of days, and when he returned to RCJ on March 28, 2010, he reported he was being given Percogesic and ibuprofen for his tooth pain by the WCJ medical staff (Turner Aff., ¶ 19).

48.

Plaintiff was continued on the ibuprofen and the Percogesic prescribed at WCJ (Turner Aff., ¶ 19).

49.

On March 30, 2010, the day Plaintiff's ibuprofen administration would expire, Plaintiff complained that his tooth pain was returning and getting worse than it was before (Turner Aff., ¶ 20).

50.

On March 31, 2010, Nurse Hannah Cheek saw Plaintiff for this alleged pain (Turner Aff., ¶ 20).

51.

Plaintiff told Nurse Cheek that his teeth had gotten worse since he was "not doing dope anymore" (Turner Aff., ¶ 20).

52.

It is common for persons who take methamphetamine to have dental problems (Turner Aff., ¶ 20).

53.

Nurse Cheek noted some swelling in Plaintiff's gums, but no redness or drainage (Turner Aff., ¶ 21). She also noted the decayed tooth (Turner Aff., ¶ 21).

54.

Per a physician's order, Ms. Cheek discontinued Plaintiff's Percogesic, but continued the ibuprofen (Turner Aff., ¶ 21).

55.

Plaintiff was advised to notify the medical staff of any changes in his condition (Turner Aff., ¶ 21).

56.

On April 6, 2010, Plaintiff complained he did not receive the correct food tray or his medications that morning (Turner Aff., ¶ 22).

57.

Nurse Turner saw Plaintiff on April 6, 2010, and he requested a soft food tray instead of his regular diet food tray (Turner Aff., ¶ 22).

58.

Plaintiff then admitted he had received his medications and just wanted a re-fill (Turner Aff., ¶ 22).

59.

Nurse Turner discussed with Plaintiff that his medications were supposed to end tomorrow, and recommended that he notify the medical staff if the pain returned (Turner Aff., ¶ 22).

60.

Plaintiff indicated he understood (Turner Aff., ¶ 22).

61.

On April 7, 2010, Plaintiff complained of swelling and throbbing in his mouth (Turner Aff., ¶ 23).

62.

However, Plaintiff was sent to WCJ for a court appearance (Turner Aff., ¶ 23). He did not return to RCJ until that weekend, on April 10, 2012 (Turner Aff., ¶ 23).

63.

On Saturday, April 10, 2010, when Plaintiff returned to RCJ, he complained that he could not eat, that his teeth were throbbing again, and that they were "killing" him (Turner Aff., ¶ 24).

64.

There is no weekend coverage at RCJ by the nursing staff, and so the medical staff could not see him until Monday, April 12, 2010 (Turner Aff., ¶ 24).

65.

If there was a medical emergency while there is no medical coverage at the jail, the officers at RCJ are trained to call 911 (Turner Aff., ¶ 24).

66.

On Monday, April 12, 2010, Nurse Turner examined Plaintiff and found no

swelling, no redness, and no drainage in his mouth (Turner Aff., ¶ 25).

67.

She further noted no changes in Plaintiff's decayed tooth (Turner Aff., ¶25). Plaintiff's vital signs were normal (Turner Aff., ¶ 25).

68.

Per protocol, Plaintiff was placed on Percogesic and a soft diet (Turner Aff., ¶ 25).

69.

Plaintiff was also advised to notify the medical staff of any changes (Turner Aff., ¶ 25).

70.

On May 4, 2010, Plaintiff complained his teeth were throbbing again, and wanted his money back because he continued to have the same problems (Turner Aff., ¶ 26).

71.

The RCJ deals with any monetary issues raised by inmates, not Nurse Turner (Turner Aff., ¶ 26).

72.

Nurse Turner saw Plaintiff on May 6, 2010, and evaluated his gums and

teeth (Turner Aff., ¶ 26).

73.

Nurse Turner noted no swelling, redness, or drainage, and no change in Plaintiff's decayed tooth (Turner Aff., ¶ 26).

74.

She explained to Plaintiff that ibuprofen can upset the GI tract, and so Plaintiff would only be given ibuprofen for fourteen days at a time (Turner Aff., ¶ 26).

75.

Plaintiff was also placed on a soft diet per protocol (Turner Aff., ¶ 26).

76.

Nurse Turner again advised Plaintiff to notify the medical staff of any changes to his condition (Turner Aff., ¶ 26).

77.

On Thursday, May 20, 2010, the day Plaintiff's medications were stopped, Plaintiff complained that he was still having the same teeth problems (Turner Aff., ¶ 27).

78.

He also threatened to sue to get his money back (Turner Aff., ¶ 27).

79.

Nurse Turner saw Plaintiff on Monday, May 24, 2010, for his complaints (Turner Aff., ¶ 27).

80.

She noted no changes to Plaintiff's conditions, but due to the fact Plaintiff had been on ibuprofen for several weeks, Plaintiff was placed on acetaminophen for pain for a week (Turner Aff., ¶ 27).

81.

Thereafter, Plaintiff was transferred back to WCJ and Nurse Turner has had no further contact with Plaintiff since his transfer (Turner Aff., ¶ 28).

82.

She spoke with a nurse from WCJ on June 8, 2010, and advised her of Plaintiff's frequent complaints of dental pain (Turner Aff., ¶ 28).

83.

Since Plaintiff was a WCJ inmate, it was the responsibility of WCJ to provide Plaintiff with any outside dental care he may require.

84.

Regardless, Nurse Turner never noticed anything that would indicate Plaintiff required the assistance of a dentist (Turner Aff., ¶ 29).

85.

The jail physician for RCJ, Dr. Marc Chetta, reviewed all of the medical records for Plaintiff at the time they were written, and he never communicated that Plaintiff needed to see a dentist for any reason while housed as RCJ (Turner Aff., ¶ 29).

86.

The treatment provided to Plaintiff at RCJ by Nurse Turner and other members of the medical staff during the timeframe relevant to the Complaint was appropriate, timely and proper at all times (Turner Aff., ¶ 30).

87.

Nurse Turner has always treated Plaintiff with his best interests in mind (Turner Aff., ¶ 30).

88.

Any time Plaintiff submitted a sick call form, or otherwise complained of any ailment, he was seen in a timely fashion and properly treated (Turner Aff., ¶ 31).

89.

No act or omission on the part of Nurse Turner caused or contributed to the injuries and damages Plaintiff has claimed in the Complaint (Turner Aff., ¶ 32).

90.

The treatment Nurse Turner provided Plaintiff met or exceeded the standard of care for nurses in like or similar situations (Turner Aff., ¶ 32).

91.

Nurse Turner has never ignored an inmate and would never intentionally or otherwise maliciously deny an inmate medical care, and she certainly did not deny Plaintiff any medical care (Turner Aff., ¶ 33).

Respectfully submitted this 7th day of January, 2013.

**FREEMAN MATHIS & GARY, LLP**

/s/ Shira A. Crittendon
Shira Adler Crittendon
Georgia Bar No. 005425
Laura L. Broome
Georgia Bar No. 452380
*Attorneys for Defendant Elizabeth Turner, LPN*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
Phone: (770) 818-0000
Fax: (770) 937-9960
Email: scrittendon@fmglaw.com; lbroome@fmglaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing brief was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1(C).

/s/ Laura L. Broome
Laura L. Broome
Georgia Bar No. 452380
*Attorney for Defendant Elizabeth Turner, LPN*

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
Phone: (770) 818-0000
Fax: (770) 937-9960
Email: lbroome@fmglaw.com

**CERTIFICATE OF SERVICE**

This is to certify that on **January 7, 2013**, I electronically filed the foregoing **Statement of Undisputed Material Facts as to which there is No Genuine Issue to be Tried Brief in Support of Motion for Summary Judgment by Defendant Elizabeth Turner, LPN,** with the Clerk of Court using the CM/ECF system, and that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

Bryan Adams
GDC #279977
Wilcox State Prison
PO Box 397
Abbeville, GA 31001
*(per change of address filed on 11/23/12)*

/s/ Laura L. Broome
Laura L. Broome
Georgia Bar No. 452380
*Attorney for Defendant Elizabeth Turner, LPN*

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
Phone: (770) 818-0000
Fax: (770) 937-9960
Email: lbroome@fmglaw.com