**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| BRYAN ADAMS,<br>GDC ID # 279977,<br>Plaintiff,<br><br>v.<br><br>NURSE ELIZABETH TURNER,<br>Rabun County Jail,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>2:10-CV-00060-RWS-JCF<br><br><br><br><br>PRISONER CIVIL RIGHTS<br>42 U.S.C. § 1983 |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Now before the Court are Defendant's motion for summary judgment (Doc. 33) with supporting brief (Doc. 33-1), affidavit (Doc. 33-2), statement of material facts (Doc. 33-4), and Plaintiff's medical records, filed under seal (Doc. 41); Plaintiff's motion for summary judgment (Doc. 35); and Defendant's response (Doc. 38).

## I. Background

The Clerk docketed Plaintiff's original complaint in this action on April 12, 2010, while he was housed at the Rabun County Jail ("RCJ"). (Doc. 1). Plaintiff executed an amended complaint on May 4, 2010, although it was not docketed until July 13, 2010. (Doc. 4). Mail addressed to Plaintiff at the RCJ on July 14, 2010 was returned to the Court as undeliverable on July 22. (Doc. 9). This civil action was therefore dismissed on November 1, 2010, due to Plaintiff's failure to update his

address. (Doc. 12). Soon thereafter, Plaintiff moved to reopen this case and updated his address to the Coffee Correctional Facility in Nichols, Georgia. (Doc. 14).

The Court then allowed Plaintiff's medical deliberate indifference claim to proceed against Defendant and summarized the allegations in Plaintiff's two complaints (Docs. 1, 4) as follows:

> Plaintiff claims that by May 4, 2010 . . . he had been at the [RCJ] for nine months, and during that time Defendant had denied him adequate medical care for his "broke off teeth," from which he had been "suffering every day" and only one of which had been pulled, leaving five others in need of the same treatment. Plaintiff also complains about the five dollar fee he was required to pay each time he sought medical attention and about the lack of adequate pain medication, which apparently caused him to "suffer all the time."

(Doc. 18 at 3 (citations omitted)).

## II. <u>Standards for Summary Judgment Review</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[Former] Rule 56(c) [now Rule 56(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,



AO 72A
(Rev.8/82)

322 (1986). When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted). Morever, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

The movant bears the initial burden of demonstrating that summary judgment is warranted. *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant may do so by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant has properly supported the summary judgment motion, the non-movant then must "come forward



AO 72A
(Rev.8/82)

with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in the non-movant's favor. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "non-moving party must come forward with *significant, probative evidence*" (emphasis added)). "[C]onclusory assertions . . . [without] supporting evidence are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

A motion for summary judgment may be supported or opposed with the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "As a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 n.4 (11th Cir. 1985) (assuming without deciding "that authenticity and completeness are among the evidentiary requirements of Rule 56"); *see also Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (stating that court "may consider only . . . evidence [that] can be reduced to an admissible form," and noting that "evidence that

is otherwise admissible may be accepted in an inadmissible form at summary judgment stage," but that hearsay generally cannot "be reduced to admissible form").

## III. The Parties' Motions for Summary Judgment

### A. Defendant's Motion for Summary Judgment

Defendant states that she "treated Plaintiff on several occasions from September 2009 through June 2010 while he was housed at RCJ intermittently." (Doc. 33-1 at 2). Defendant has described in detail the treatment Plaintiff received during that time, part of which he spent at the White County Jail ("WCJ"). (*Id.* at 2-10). "On September 17, 2009, Plaintiff was transferred to RCJ. . . . [and] did not report any history of dental problems to the intake officer, [although] his medical information transfer form from WCJ indicated he had dental problems and was receiving Percogesic for pain and a Peridyl (dental) Rinse." (*Id.* at 3 (citations omitted)). "[T]hese medications were continued per standing protocol at RCJ. Plaintiff was subsequently sent back to WCJ and then returned to RCJ on November 20, 2009." (*Id.* (citations omitted)).

Two of Plaintiff's teeth "reportedly" were pulled during his stay at the WCJ, and after his return to the RCJ on November 20, he received the pain and antibiotic medication recommended by the WCJ medical staff. (*Id.*). On that date, Defendant noted that Plaintiff "had no active bleeding, no acute distress, had a normal



AO 72A
(Rev.8/82)

temperature, and was talkative." (*Id.*). "Plaintiff did not complain . . . of any teeth issues again until February 25, 2010, when he submitted a sick call form complaining he had two 'broke off' teeth and was hurting, and also complained of back pain. On February 26, 2010, [Defendant] saw Plaintiff and per the RCJ protocol, he was placed on Percogesic for his pain for fourteen days." (*Id.* at 4 (citations omitted)). On March 6, Plaintiff complained of a bad toothache. On March 8, Defendant followed "standing protocol" by "plac[ing] Plaintiff on a soft food diet and ibuprofen to treat [his] alleged pain." (*Id.*).

Because Plaintiff complained about the soft diet on March 9, he was returned to a normal diet on March 10, and his ibuprofen was discontinued. (*Id.*). On March 15, in response to Plaintiff's March 14 request for antibiotics, Defendant examined Plaintiff and noted "a small amount of redness and swelling in his gums, but no drainage," and "a decayed tooth, which she continued to monitor . . . . for any change in condition that would require the intervention of a dentist." (*Id.* at 4-5 (citations omitted)). "Per RCJ protocol, Plaintiff was placed on an antibiotic to ward off infection, was also given ibuprofen for pain, and was placed on a soft diet again." (*Id.* at 5). On March 19, Defendant saw Plaintiff concerning his "new claims [that] he was vomiting the cheese" in his soft diet, submitted via Plaintiff's medical request dated



AO 72A
(Rev.8/82)

March 17, but Defendant made no change in Plaintiff's treatment protocol. (*Id.*). On March 22, after Plaintiff complained about not receiving his pain medication at morning pill call, he received ibuprofen and an antibiotic that evening. The next day, Defendant examined Plaintiff in response to his complaint that, even though he had completed one round of ibuprofen, without more ibuprofen his tooth pain would start again, and also regarding Plaintiff's request to have all his teeth pulled. Noticing "no swelling, redness, or drainage," and "no changes in [his] decayed tooth," Defendant placed Plaintiff "back on ibuprofen for seven more days." (*Id.* at 6). When Plaintiff returned from the WCJ on March 28, after he had been there for a couple of days, he "was continued on the ibuprofen and the Percogesic prescribed at WCJ." (*Id.*).

Plaintiff was examined again by the RCJ medical staff on March 31 (based on his complaint of continuing pain submitted on March 30) and on April 6 (based on his complaint on that date that he had not received his food tray or medication, although he later admitted that he had received his pain medication, but just wanted a re-fill). (*Id.* at 6-7). On April 7, Plaintiff complained that his pain medication had stopped and the swelling and throbbing on the left side of his mouth had started again, but he was sent to the WCJ that day and only returned on April 10, a Saturday, when he "complained that he could not eat, that his teeth were throbbing again, and that they



AO 72A
(Rev.8/82)

were 'killing' him." (*Id.* at 7-8). Because there is no weekend coverage by the RCJ nursing staff, Defendant did not see Plaintiff again until April 12, the following Monday, when she "examined Plaintiff and found no swelling, . . . redness, [or] drainage in his mouth[,] . . . noted no changes in [his] decayed tooth[, and also noted] . . . [that his] vital signs were normal. . . . Per protocol, Plaintiff was placed on Percogesic and a soft diet. Plaintiff was also advised to notify the medical staff of any changes." (*Id.* at 8 (citations omitted)).

"On May 4, 2010, Plaintiff complained his teeth were throbbing again, and wanted his money back because he continued to have the same problems." (*Id.*). Defendant examined Plaintiff on May 6 and again "noted no swelling, redness, or drainage, and no change in [his] decayed tooth." (*Id.*). "On Thursday, May 20, 2010, the day Plaintiff's prescriptions expired, [he] complained that he was still having the same teeth problems." (*Id.* at 9). Defendant examined Plaintiff on May 24, the following Monday, and again noted no change in his condition. (*Id.*). Because Plaintiff had been taking ibuprofen for several weeks, which can irritate the digestive tract, he "was placed on acetaminophen for pain for a week." (*Id.* at 9). Shortly thereafter, Plaintiff was transferred back to the WCJ and Defendant had no further contact with him, although she did discuss his "frequent complaints of dental pain"



AO 72A
(Rev.8/82)

with a WCJ nurse on June 8, 2010. (*Id.*). Defendant supports her factual recitation with her own affidavit (*id.* at 2-10 (citing Doc. 33-2, Turner Aff.), which is supported, in turn, by Plaintiff's medical records from the RCJ during the relevant time period. (Doc. 41).

Defendant argues that there is no record evidence to support Plaintiff's deliberate indifference claim—no evidence that her conduct "even arguably rises to the level of negligence, much less one that would cause Plaintiff an unnecessary and wanton infliction of pain" (*id.* at 14 (internal quotations omitted)), and no evidence that she "was aware of [a] significant risk of serious harm [to Plaintiff] but deliberately proceeded with grossly inadequate treatment anyway" (*id.* at 16 (internal quotations omitted)). Defendant states that she "evaluated and treated Plaintiff over a dozen times for his dental pain, monitoring him closely," and she contends that her "care and treatment . . . was appropriate, timely, and proper." (*Id.* at 14). She argues that "Plaintiff's claims amount to a simple disagreement over what type and . . . dosage of medications he should receive, and whether his teeth should all be pulled, and this difference of opinion is not a basis for a § 1983 claim." (*Id.* at 14-15).



AO 72A
(Rev.8/82)

**B. Plaintiff's Motion for Summary Judgment**

Plaintiff has not filed a motion for summary judgment *per se*, although he has styled his two-page response to Defendant's summary judgment motion as one. (*See* Doc. 35). Plaintiff argues that his allegations of serious dental problems are proven by the fact that he often complained about his dental condition, was examined by Defendant, and received medications for that condition. (*Id.* ¶¶ 3-5, 13). He notes that Defendant herself reported his swollen gums and "decayed teeth." (*Id.* ¶¶ 9-10). He denies Defendant's statement that he had "no acute distress," asserting that he "was coming to see her" precisely because he was "hurting very badly," was "hurting the whole time," and "stayed in pain and had [a] hard time eating." (*Id.* ¶¶ 7-8, 11).

He denies ever having been housed at the RCJ before he was boarded out there from the WCJ in 2009. (*Id.* ¶¶ 1-2). He asserts that Defendant's statement that he had two teeth pulled while at the WCJ is "a lie"; rather, "Rabun County sent [him] back to get them pulled after months of complaining and medical treatments which did not fix the problem." (*Id.* ¶ 6). He asserts that Defendant is to blame, based on the manner in which his scheduled medications were distributed, for his failing to receive them on the morning of March 22, 2010. (*Id.* ¶ 12). He also denies that he reported on April 6, 2010 that he had not received his medications. (*Id.* ¶ 16). Finally, he disputes

Defendant's suggestion that he ever used methamphetamine. (*Id.* ¶¶ 14-15; *see* Doc. 33-1 at 6-7 (reporting that "Plaintiff told Nurse Cheek that his teeth had gotten worse since he was 'not doing dope anymore,' " and noting that "[it] is common for persons who take methamphetamine to have dental problems")).

In sum, Plaintiff contends that he should be awarded damages because he has shown "proof that [he] stayed in pain." (Doc. 35 at 2). He claims that "it was obvious that [he] was suffering with [his] teeth," and Defendant's failure to change his treatment or to send him to a dentist "shows negligence [by the] medical staff" at the RCJ. (*Id.*). He contends that Defendant "laughed in [his] face" when he threatened to sue and that he suffered for months because she would not send him to a dentist. (*Id.*).

## IV. <u>Analysis</u>

### A. <u>What Constitutes Deliberate Indifference to a Serious Medical Need</u>

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). The Eighth Amendment prohibits indifference to a serious medical need so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429

U.S. 97, 104 (1976) (internal quotations omitted). To demonstrate deliberate indifference, a plaintiff must show both "an objectively serious medical need" and the defendant's subjective knowledge of, and more than negligent disregard of, that need. *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003). "To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted). "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (internal quotations omitted).

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (noting that "prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain"). Negligence, however, even rising to the level of medical malpractice, does not constitute deliberate

indifference. *McElligott*, 182 F.3d at 1254; *see also Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999) (noting that it is well-settled that "medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference"), *amended by* 205 F.3d 1264 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that "[m]ere negligence in diagnosing or treating a medical condition is an insufficient basis" for a deliberate indifference claim).

A simple disagreement over a diagnosis or course of treatment does not constitute deliberate indifference. As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment does not give rise to a constitutional claim. *See Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991); *see also Adams*, 61 F.3d at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983"); *Harris v. Leder*, No. 12-12098, 2013 U.S. App. LEXIS 10485, at *13 (11th Cir. May 24, 2013) (" 'Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration.' " (quoting *Thigpen*, 941 F.2d at 1504)).

**B. <u>Plaintiff Has Not Alleged Facts Sufficient To Establish a Genuine Issue of Material Fact for Trial on His Deliberate Indifference Claim Because He Received At Least Minimally Adequate Treatment for His Dental Problems.</u>**

The leading case in this circuit on deliberate indifference to a prisoner's dental needs is *Farrow*, in which the evidence showed that the prisoner-appellant had "endured for at least fifteen months . . . . pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, weight loss, and such continuing medical problems" that his "dental and medical condition . . . became serious." *Farrow*, 320 F.3d at 1244-45. The Eleventh Circuit concluded that "[w]hile [appellant's] condition did not require immediate attention, his claim survives summary judgment given his recognized need for denture treatment, the nature of his continuing problems, the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay in this case." *Id.* at 1247. The court also "conclud[ed that] an issue of fact is presented as to whether [the appellee-dentist's] conduct displayed deliberate indifference to [appellant's] serious medical need." *Id.* at 1247-48 (noting that "the evidence would support a jury finding that [the dentist] purposefully refused to treat or see [appellant] for a considerable period of time after [the dentist] had an argument with [appellant] during the November 1999 visit," and also would support a jury



AO 72A
(Rev.8/82)

finding that "[d]uring this long delay in treatment, . . . [appellant] was permitted to suffer from pain, bleeding and swollen gums and periodic weight loss . . . .").

District courts in this circuit have distinguished *Farrow*, however, from cases similar to the one presently before this Court. In *Jones v. Taylor*, No. 5:09-CV-391 (MTT), 2011 WL 1196102 (M.D. Ga. Mar. 9), *adopted by* 22011 WL 1213097 (M.D. Ga. Mar. 28, 2011), for example, the Magistrate Judge considered the claims of a prisoner who saw a dentist after complaining of inflamed, infected, and bleeding gums, and was examined and then placed on a waiting list for a dental cleaning:

> Contrary to the evidence in *Farrow*, the evidence in the record herein shows that Plaintiff suffered from a dental condition that, according to the Plaintiff's sworn testimony, caused only tooth sensitivity, bleeding gums, and eventual tooth loss. Plaintiff does not allege or establish any further physical effects resulting from his dental condition. . . .
>
> The facts as set out by the Plaintiff herein do not establish that he suffered from a serious medical need, nor do the facts establish that [the dentist] acted with deliberate indifference to such a need. At the most, the Plaintiff presents a case in which the patient and the physician disagreed as to the proper course of treatment, once the physician had determined the proper categorization and treatment for Plaintiff's dental conditions.

*Id.* at *7; *see also Alvarado v. Manocha*, No. 4:09cv316-MP/WCS, 2010 U.S. Dist. LEXIS 141486, at *25-29 (N.D. Fla. Dec. 15, 2010) (distinguishing *Farrow*), *adopted by* 2011 U.S. Dist. LEXIS 16476 (N.D. Fla. Feb. 18, 2011); *Anderson v. Goodman*,



AO 72A
(Rev.8/82)

No. 07-0736-WS-C, 2008 U.S. Dist. LEXIS 80147, at *17 n.4 (S.D. Ala. Oct. 1, 2008) (distinguishing *Farrow*—"in which Defendant, a private dentist who provided dental services to prison inmates, inexplicably delayed providing dentures to Plaintiff for fifteen months after determining that Plaintiff, who had only two teeth which cut into his gums, needed the dentures"—from case before the court, where, among other things, plaintiff's "condition did not appear to be an emergency [and] there were no signs of a deteriorating medical condition (such as swelling, bleeding, or significant weight loss)").

Based on the undisputed facts of the case now before this Court, the undersigned finds at most a disagreement between Plaintiff and Defendant over the proper course of treatment for Plaintiff's dental problems. Such a disagreement, by itself, cannot support a deliberate indifference claim. *See Thigpen*, 941 F.2d at 1504-05; *see also Wallace v. Sheriff*, No. 12-13464, 2013 U.S. App. LEXIS 8314, at *4-5 (11th Cir. Apr. 24, 2013) (affirming summary judgment in favor of defendant because plaintiff's "mere disagreement with [doctor's] diagnosis and [defendant's] actions consistent therewith is insufficient to demonstrate deliberate indifference," and noting that plaintiff's medical complaints "clearly received a substantial amount of medical attention"). There is no dispute here over the fact that Plaintiff received frequent



AO 72A
(Rev.8/82)

examinations and prescriptions in an effort to alleviate pain and to fight infection while housed at the RCJ. Plaintiff wanted a different treatment plan than the one Defendant chose for him. However, absent an indication that Defendant's treatment choices constituted the "unnecessary and wanton infliction of pain," *see Estelle*, 429 U.S. at 104, which the evidence before the Court does not support, it is not the Court's function to substitute its medical judgment for Defendant's. *See Adams*, 61 F.3d at 1547; *see also Wallace*, 2013 U.S. App. LEXIS 8314, at *3 (noting that "where an inmate's health complaints received significant medical attention, [courts] are reluctant to second guess the medical judgments of those who provided the care").

Moreover, Plaintiff has offered no evidence to support his deliberate indifference claim other than his contention that his medical treatment was inadequate because he stayed in pain. (*See* Doc. 35 at 2). He has not indicated, however, that he suffered any other related health problems, such as weight loss or bleeding gums, as a result of his dental condition. (*See* Doc. 41 at 1 (reporting Plaintiff's weight as 192 pounds on July 5, 2009); *id.* at 12 (210 pounds on February 26, 2010); *id.* at 21 (209 pounds on May 24, 2010); *id.* at 22-38 (Plaintiff's sick call medical requests, with no specific complaint of bleeding gums, only general complaints regarding pain and one complaint of "swelling")). Furthermore, it appears from his medical requests that



AO 72A
(Rev.8/82)

Plaintiff experienced pain in his mouth intermittently, generally when he was denied, on occasion, access to pain medication altogether, due to a change in his location between the RCJ and the WCJ, a change in his medication regimen, or a simple oversight. (*See id.* at 31 (Plaintiff's March 22, 2010 medical request, indicating that he did not get his pain medications and that without them his teeth "will start back hurting"); *id.* at 34 (Plaintiff's April 7, 2010 medical request that his medication has "stop[p]ed now" and the throbbing in the left side of his mouth is "starting again")). It is also apparent that when Plaintiff complained about the pain in his mouth, Defendant and the RCJ medical staff responded promptly to try to do something to alleviate that pain. They did not simply ignore his complaints or refuse to provide any care designed to alleviate his pain.

## V. <u>Conclusion</u>

For the foregoing reasons, Plaintiff has not demonstrated the existence of a triable issue of material fact with regard to his deliberate indifference claim, which should be dismissed as a matter of law. *See Bailey*, 284 F.3d at 1243; *Chanel, Inc.*, 931 F.2d 1477.

Accordingly, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (Doc. 33) be **GRANTED**, that Plaintiff's motion for summary judgment

(Doc. 35) be **DENIED**, and that this civil action be **DISMISSED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED and DIRECTED** this 12th day of June, 2013.

/s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge



AO 72A
(Rev.8/82)